**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GLENN SALAZAR,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

     Plaintiffs,

 v.

TUSCANY 38, INC.
  d/b/a IL MONELLO,
NY BESS CORP.
  d/b/a TUSCANY STEAKHOUSE,
244 RESTAURANT LLC
  d/b/a IL TINELLO EAST,
SXB RESTAURANT CORP.
  d/b/a IL TINELLO WEST,
STEVE HAXHIAJ, and
BEN CELAJ

     Defendants.

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

   Plaintiff GLENN SALAZAR (hereinafter, "Plaintiff"), on behalf of himself and others

similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective

Action Complaint against Defendants TUSCANY 38, INC. d/b/a IL MONELLO, NY BESS

CORP. d/b/a TUSCANY STEAKHOUSE, 244 RESTAURANT LLC d/b/a IL TINELLO EAST,

1

SXB RESTAURANT CORP. d/b/a IL TINELLO WEST, (the "Corporate Defendants"), STEVE HAXHIAJ, and BEN CELAJ ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1.    Plaintiff alleges, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that Plaintiff, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (i) unlawfully retained gratuities, (ii) statutory penalties, (iii) liquidated damages, and (iv) attorney's fees and costs.

2.    Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), Plaintiff and others similarly situated are entitled to recover from Defendants: (i) unpaid statutory minimum wage due to Defendants' invalid tip credit, (ii) unpaid spread of hours premium, (iii) unlawfully retained gratuities, (iv) statutory penalties, (v) liquidated damages, and (vi) attorney's fees and costs.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this controversy, pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.    At all relevant times herein, Plaintiff, GLENN SALAZAR, was and is a resident of Queens County, New York.

6.    At all relevant times, Individual Defendants collectively own and operate the following restaurants located in New York City:

i.   Il Monello – 337 East 49th Street, New York, NY 10017.

ii.  Tuscany Steakhouse – 111 W 58th Street, New York, NY 10019.

iii. Il Tinello East – 244 E 46th Street, New York, NY 10017.

iv.  Il Tinello West – 16 W 56th Street, New York, NY 10019. (collectively, the "Restaurants")

7.   The Restaurants are operated as a single integrated enterprise under the common control of Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

i.   The Restaurants are under the control of Corporate Defendants and Individual Defendants. Specifically, Individual Defendants STEVE HAXHIAJ and BEN CELAJ own and operate all the Restaurants. *See* **Exhibit A,** Articles identifying Individual Defendants as owners of the Restaurants. *See also* **Exhibit B,** Corporate Defendants' public records.

ii.  Individual Defendants are identified as principals in the Restaurants' liquor licenses. *See* **Exhibit C**, the Restaurants' liquor licenses**.**

iii. The Restaurants are in the same business of providing food service and hosting private events for weddings, receptions, and corporate events. All Restaurants have an Italian cuisine. *See* **Exhibit D**, the Restaurants' websites**,** also available at: https://www.tuscanysteakhouse.com/#about, https://www.ilmonellonyc.com/index.html#about, https://iltinellony.com/east/#about, and https://iltinellony.com/west/#about.

iv.  Restaurants Il Monello and Tuscany Steakhouse offer event spaces with similar names, specifically the "Tuscany" room and the "Cellar" room,

which is designated for private events. *See* **Exhibit D**, also available at: https://www.ilmonellonyc.com/index.html#bookyourevent                   and https://www.tuscanysteakhouse.com/#bookyourevent.

v.  Restaurants Il Monello's and Tuscany Steakhouse's "Events & Specials" are grouped into the same categories: (1) "HAND-CRAFTED COCKTAILS," (2) "USDA PRIME DRY AGED," (3) "TAKE OUT & DELIVERY," (4) "HANDMADE PASTAS." Both Il Tinello restuarants also have the: (1) take out & delivery, and (2) pasta categories in their "Events & Specials" webpage. *See* **Exhibit D**, also available at: https://www.tuscanysteakhouse.com/#events,

https://www.ilmonellonyc.com/index.html#events,

https://iltinellony.com/east/#events,                                   and

https://iltinellony.com/west/#events.

vi.  Restaurants Il Monello's and Tuscany Steakhouse's menus are grouped into the same categories: (1) "LUNCH & DINNER," (2) "DRINKS," (3) "PARTY PACKAGES," and (4) "DESSERTS." Both Il Tinello restuarants also have the similar menu categories except for the party packages category. *See* **Exhibit D**, also available at: https://tuscanysteakhouse.com/index.html#menus,

https://www.ilmonellonyc.com/index.html#menus,

https://iltinellony.com/east/#menus,                                   and

https://iltinellony.com/west/index.html#menus.

vii.   All Restaurants engaged in the services of "NYC Restaurant" for their web design, marketing, and social media advertisements. *See* **Exhibit E,** NYC Restaurant's Instagram account. All Restaurants' websites have the same layout. *See* **Exhibit D**.

viii.   All Restaurants have the same statement regarding their compliance with the Americans with Disabilities Act found on each of their websites, available at: https://ilmonellonyc.com/accessibility-statement/; https://tuscanysteakhouse.com/accessibility-statement/; https://iltinellony.com/west/accessibilityada.html; and https://iltinellony.com/east/accessibilityada.html. *See* **Exhibit F,** the Restaurants' ADA Compliance Statement on their Websites.

ix.   Employees are interchangeable among the Restaurants. Based on Plaintiff's personal observations and conversations with other employees, Defendants frequently transfer the employees from Il Monello to either of the other three Restaurants and vice versa.

x.   The Restaurants share the payroll methods and have a single, centralized system of labor relations for employees.

8.    Corporate Defendant, TUSCANY 38, INC. d/b/a IL MONELLO, is a domestic business corporation organized under the laws of New York, with a principal place of business located at 337 East 49th Street, New York, NY 10017 and an address for service of process at 931 Morris Park Ave., 2nd Floor, Bronx, NY 10462.

9.    Corporate Defendant, NY BESS CORP. d/b/a TUSCANY STEAKHOUSE, is a domestic business corporation organized under the laws of New York, with a principal place of

business located at 111 W 58th Street, New York, NY 10019 and an address for service of process at 931 Morris Park Ave., 2nd Floor, Bronx, NY 10462.

10.    Corporate Defendant, 244 RESTAURANT LLC d/b/a IL TINELLO EAST, is a domestic business corporation organized under the laws of New York, with a principal place of business located at 244 E 46th Street, New York, NY 10017 and an address for service of process at 931 Morris Park Ave., 2nd Floor, Bronx, NY 10462.

11.    Corporate Defendant, SXB RESTAURANT CORP. d/b/a IL TINELLO WEST, is a domestic business corporation organized under the laws of New York, with a principal place of business located at 16 W 56th Street, New York, NY 10019 and an address for service of process at 931 Morris Park Ave., 2nd Floor, Bronx, NY 10462.

12.    Individual Defendant STEVE HAXHIAJ is the owner of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant STEVE HAXHIAJ exercises the power to, and also delegates to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant STEVE HAXHIAJ has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant STEVE HAXHIAJ additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant STEVE HAXHIAJ ensures that managers implement Defendants'

employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

13.    Individual Defendant BEN CELAJ is the executive officer of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant BEN CELAJ exercises the power to, and also delegates to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant BEN CELAJ has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant BEN CELAJ additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant BEN CELAJ ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

14.    At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

15.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

16.     At all relevant times, Plaintiff was Defendants' employees within the meaning of NYLL §§ 2 and 651. At all relevant times, Defendants were Plaintiff's employers within the meaning of NYLL §§ 2 and 651.

17.     At all relevant times, Defendants employed at least eleven (11) employees as defined under the NYLL.

<u>**FLSA COLLECTIVE ACTION ALLEGATIONS**</u>

18.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C § 216(b), on behalf of all current and former, non-exempt, front-of-house employees (including, but not limited to, waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including tips. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs for: (i) unlawfully retained gratuities, (ii) statutory penalties, (iii) liquidated damages, and (iv) attorney's fees and costs.

20.     The claims for relief are properly brought under and maintained as an opt-in collective pursuant to §16(b) of FLSA, 29 U.S.C. § 216(b). FLSA Collective Plaintiffs are readily ascertainable. The number and identity of the FLSA Collective Plaintiffs are able to be determined from the records of Defendants. The hours assigned and worked, the positions held, and rates of

pay for each FLSA Collective Plaintiff are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily ascertainable from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS**

21.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former, non-exempt, front-of-house and back-of-house employees (including, but not limited to, waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers, delivery persons, cooks, dishwashers, expeditors, food preparers, and porters, among others)  employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

22.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees

("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

24.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failing to pay spread of hours premium for each workday that exceeded ten (10) or more hours, (ii) failing to provide wage and hour notices to Class Members upon hiring and as legally required thereafter, (iii) failing to provide proper wage statements for each payment period,

25.     With regard to the Tipped Subclass, Defendants failed to pay the proper minimum wage as they were not entitled to claim any tip credit because they failed to meet statutory requirements under NYLL. Plaintiff and Tipped Subclass members similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to provide proper tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in continuous non-tipped duties for more than thirty (30) minutes which exceed 20% of the total hours worked each workweek, (iii) claimed a tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes, (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to keep track of daily tips earned and maintain records thereof.

26.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each

Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

27.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against the corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

i.     Whether Defendants employed Plaintiff and the Class within the meaning of New York Labor Law and applicable state laws;

ii.     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and Class members;

iii.     At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

iv.     Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

v.     Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class members spread of hours premiums, as required under NYLL;

vi.     Whether Defendants properly provided notice to Plaintiff and the Tipped Subclass members that Defendants were taking a tip credit; and

vii.    Whether Defendants provided proper tip credit notice to Plaintiff and the Tipped Subclass members at hiring and annually thereafter.

viii.   Whether Defendants caused Plaintiff and the Tipped Subclass members to engage in non-tipped duties exceeding twenty percent (20%) of their work shift;

ix.    Whether Defendants claimed tip credit for any continuous periods of time of nontipped, directly supporting work exceeding 30 minutes;

x.     Whether Defendants illegally retained gratuities of Plaintiff and Tipped Subclass members;

xi.    Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

xii.   Whether Defendants provided proper wage statements informing the Plaintiff and Tipped Subclass members of the amount of tip credit taken for each payment period and their proper overtime rate of compensation, as required under the NYLL.

xiii.  Whether Defendants provided proper wage and hour notices to Plaintiff and the Class members, including, among others, the rate of compensation, overtime rate, trade name of employer, pursuant to the requirements of NYLL;

xiv.   Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees, per requirements of NYLL;

xv.    Whether Defendants provided Plaintiff and Class Members proper wage statements with each payment of wages, as required under NYLL;

**STATEMENT OF FACTS**

31.    In or about December 2022, Plaintiff was hired by Defendants to work as a busboy for Defendants' Il Monello restaurant located at 337 E 49th St, New York, NY 10017. Plaintiff was

employed by Defendants until on or about December 2023, when he was terminated by Defendants.

32.    Throughout his employment, Plaintiff was compensated at ten dollars ($10.00) per hour, or the tip credit minimum wage rate. Similarly, FLSA Collective Plaintiffs and Tipped Subclass members were compensated at a tip credit wage.

33.    From the start of his employment in or around October 2023, Plaintiff was regularly scheduled to work five (5) days per week, Mondays, Tuesdays, and Thursdays from 6:00 p.m. to 11:00 p.m., Fridays from 11:00 a.m. to 10:00 p.m., and Saturdays from 6:00 p.m. to 12:00 a.m., for a total of thirty-two hours (32) hours per week. From in or around October 2023 to the end of his employment, Plaintiff was regularly scheduled to work four (4) days per week, Mondays, Tuesdays, and Thursdays from 6:00 p.m. to 11:00 p.m., and Fridays from 11:00 a.m. to 12:00 a.m., for a total of twenty-eight hours (28) hours per week.

34.    Throughout his employment, Plaintiff ALVARADO regularly worked double shifts, for an average of twelve (12) hours per shift, at least once per week. Despite working shifts exceeding ten (10) hours per day, he was not paid a spread of hours premium. Similarly, Class members regularly worked shifts exceeding ten (10) hours in duration and were not paid proper spread of hours premium.

35.    Plaintiff was paid below the minimum wage at an invalid "tip credit" minimum wage rate. Defendants were not entitled to claim any tip credit allowance under NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two hours or twenty (20%) of the total hours worked each shift; (iii) claimed tip credit for all continuous periods of time of non-tipped, directly supporting work

exceeding thirty (30) minutes; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (v) failed to accurately keep track of daily tips earned and maintain records thereof. Similarly, Defendants are not entitled to claim any tip credit allowance from the Tipped Subclass members.

36.    Plaintiff was required to engage in at least two (2) hours or more than twenty percent (20%) of his working time in non-tipped related activities, including but not limited to, refilling sugar containers, cleaning wine bottles, doing napkin roll-ups, lighting all e-candles, polishing silverware and glassware, accepting and storing deliveries (hereinafter the "non-tipped duties"). Similarly, the Tipped Subclass members spent an average of two (2) hours or twenty percent (20%) of the total hours worked each shift on non-tipped duties. Despite Plaintiff, FLSA Collective Plaintiffs and the Tipped Subclass members engaging in at least two (2) hours of non-tipped work, Defendants improperly claimed tip credit for all hours worked.

37.    Additionally, Defendants improperly claimed a tip credit for all continuous periods of time of Plaintiff's non-tipped, directly supporting work exceeding 30 minutes. Similarly, Defendants improperly claimed a tip credit for all continuous periods of time of the Tipped Subclass members' non-tipped, directly supporting work exceeding 30 minutes.

38.    At all relevant times, Defendants illegally retained gratuities. Defendants maintain a tip pool that is supposedly comprised of cash and credit card tips. Defendants allocate tips based on a point system. Plaintiff was supposed to get 0.5 points from the cash and credit card tip pool. However, Defendants only paid Plaintiff his share in credit card tips. Defendants never paid Plaintiff his share in the cash tips which Plaintiff earned throughout his employment. Moreover, Defendants allowed a waiter, Vicente [LNU], to pocket cash tips. Plaintiff and other employees frequently witnessed this unlawful practice and complained about this to Defendants but

Defendants did not even attempt to resolve the issue. Similarly, FLSA Collective Plaintiffs and Tipped Subclass members were never properly paid gratuities to which they are entitled.

39.    Plaintiff and Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

40.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

41.    Defendants further violated the WTPA by failing to provide Plaintiff and Class members with accurate wage statements, which the WTPA requires. *See Rojas v. Splendor Landscape Designs*, Ltd., 268 F. Supp. 3d 405, 413 (E.D.N.Y. 2017) ("Here, it is undisputed that the wage statements furnished to Plaintiffs were inaccurate in that they did not reflect all of the hours worked by Plaintiffs. Nor did they reflect Plaintiffs' *actual* pay rates.") (emphasis added); *Brito v. Lucky Seven Rest. & Bar, LLC*, 2021 U.S. Dist. LEXIS 55822, at *36 (S.D.N.Y. Mar. 24, 2021) ("And of course, the wage statements are inaccurate more generally in falsely portraying Brito's pay as the product of an hourly, rather than a weekly, wage rate."). The wage statements furnished to Plaintiff were inaccurate because the wages stated therein did not include proper rate at which Plaintiff should be paid, and the tips that Plaintiff actually earned. Instead, they reflected the tips Plaintiff gained minus the amount that was illegally appropriated by Defendants.

42.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

43.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide wage notices and paystubs listing the proper rates of pay and the tips actually earned, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

44.     Had the wage statements Defendants provided to Plaintiff and Class members accurately listed the total wages that Plaintiff and Class members earned, as opposed to what they received, Defendants would have had to either (a) increase the latter to correspond to the with the former or (b) forthrightly acknowledge, by way of the wage statement, that the wages

received did *not* correspond to the wages that Plaintiff and Class members earned. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

45.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

46.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

47.    The direct effect of understating the wages earned on wage statements, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

48.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

49.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

50.     Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the wages earned been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages paid for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class

members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

51.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

52.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

53.    Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this

requirement and therefore are entitled to keep their Social Security accounts accurate.").

54.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

55.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

56.    Defendants knowingly and willingly failed to pay Plaintiff and the Class members spread of hours premium for shifts worked in excess of ten (10) hours in duration each workday.

57.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Tipped Subclass members the proper minimum statutory wage for all hours worked due to invalid tip credit.

58.    Defendants knowingly and willfully operated their business with a policy of illegally retaining gratuities that Plaintiff, FLSA Collective Plaintiffs and Tipped Subclass members are entitled to.

59.    Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

60.    Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage statements as required under NYLL.

61.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Tipped Subclass members proper tip credit notice, at date of hiring and annually thereafter, in direct violation of NYLL.

62.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements clearly indicating tip credit allowance for each payment issued to Plaintiff and Tipped Subclass members, as required by NYLL § 195(3).

63.    Due to Defendants' FLSA and NYLL violations, Plaintiff, FLSA Collective Plaintiffs and Class members are entitled to recover from Defendants their unpaid minimum wages, retained gratuities, spread of hours premiums, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the FLSA and the NYLL.

64.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

65.     Plaintiff realleges and reavers all the foregoing allegations of this complaint as fully set forth herein.

66.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

67.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

68.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

69.     At all relevant times, Defendants willfully violated Plaintiff and FLSA Collective Plaintiffs rights by illegally retaining gratuities that were legally due to the Plaintiffs and FLSA Collective Plaintiffs.

70.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then

seek leave of Court to amend this Complaint to set forth the precise amount due.

71.      Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their gratuities, when Defendants knew or should have known such was due.

72.      Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

73.      As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

74.      Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid gratuities, plus an equal amount as liquidated damages.

75.      Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

76.      Plaintiff realleges and reavers all the above allegations of this complaint as fully set forth herein.

77.      At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

78.      At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiff and Tipped Subclass members the prevailing New York City minimum wage rate due to Defendants' invalid tip credit.

79.      At all relevant times, Defendants knowingly and willfully operated their business

with a policy and practice of not paying the proper spread of hours premium for each workday that exceeded ten (10) or more hours.

80.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of illegally retaining tips.

81.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to keep track of daily tips earned and maintain records thereof, in direct violation of NYLL.

82.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members proper wage and hour notice, at date of hiring and annually thereafter, in direct violation of NYLL.

83.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Tipped Subclass members proper tip credit notice, at date of hiring and annually thereafter, in direct violation of NYLL.

84.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements clearly indicating tip credit allowance for each payment issued to Plaintiff and Tipped Subclass members, as required by NYLL § 195(3).

85.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements with every payment issued to Plaintiff and Class Members, as required by NYLL § 195(3).

86.      Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid minimum wage, unpaid spread of hours premium, illegally retained tips, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages due to invalid tip credit deductions under the NYLL;

d.  An award of unpaid spread of hours premiums under the NYLL;

e.  An award of unlawfully retained gratuities under the FLSA and NYLL;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

g.  An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

h.  An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

i.  Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiff as Representatives of the Class;

l.  Payment of a reasonable service award to Plaintiff, in recognition of the services she

has rendered and will continue to render to Class members, and the risks they have

taken and will take; and

m.  Such other and further legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by

jury on all issues so triable as of right by jury.


Date: March 19, 2024                                    Respectfully submitted,
       New York, New York                      By:  /s/ *C.K. Lee*
                                                   C.K. Lee, Esq.
                                                   **LEE LITIGATION GROUP, PLLC**
                                                   C.K. Lee (CL 4086)
                                                   Anne Seelig (AS 3976)
                                                   148 W. 24th Street, 8th Floor
                                                   New York, NY 10011
                                                   Tel.: 212-465-1180
                                                   Fax: 212-465-1181
                                                 *Attorneys for Plaintiff,*
                                                   *FLSA Collective Plaintiffs*
                                                   *and the Class*